UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CENTER TO ADVANCE SECURITY IN
AMERICA,

        Plaintiff,

   v.

DEPARTMENT OF HOMELAND
SECURITY,

        Defendant.

Civil Action No. 24-1607 (APM)

**DEFENDANTS' MOTION TO DISMISS, OR FOR SUMMARY JUDGMENT,
<u>AND MEMORANDUM IN SUPPORT THEREOF</u>**

**TABLE OF CONTENTS**

Table of Contents ............................................................................................................... i

Table of Authorities .......................................................................................................... ii

FACTUAL BACKGROUND ............................................................................................. 1

LEGAL STANDARDS ....................................................................................................... 3

    I.      Motion to Dismiss ............................................................................................. 3

    II.     Motion for Summary Judgment ......................................................................... 5

ARGUMENT ...................................................................................................................... 6

    I.      Plaintiff Did Not Submit a Valid Request. ....................................................... 6

        A.     Overly Broad and Vague Subject Matter ................................................ 8

        B.     Overly Broad Set of Custodians, Recipients, and Senders ...................... 10

        C.     Overly Broad Search Terms ..................................................................... 13

        D.     Overly Broad Definition of Requested Records ....................................... 14

    II.     Alternatively, Plaintiff Failed to Exhaust its Administrative Remedies............... 15

CONCLUSION ................................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alston v. Johnson*,
  208 F. Supp. 3d 293 (D.D.C. 2016) ........................................................................... 4

\* *Am. Ctr. for L. & Just. v. Dep't of Homeland Sec.*,
  573 F. Supp. 3d 78 (D.D.C. 2021) ................................................. 7, 10, 12, 14

*Am. Fed'n of Gov't Emps. v. Dep't of Com.*,
  907 F.2d 203 (D.C. Cir. 1990) .................................................................. 7, 8, 11

\* *Anand v. Dep't of Health & Hum. Servs.*,
  Civ. A. No. 21-1635 (CKK), 2023 WL 2646815 (D.D.C. Mar. 27, 2023) ........................... 8, 10

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ...................................................................................... 6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................... 3

*Assassination Archives v. CIA*,
  720 F. Supp. 217 (D.D.C. 1989) .......................................................................... 8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................... 3

*Borden v. FBI*,
  No. 94-1029, 1994 WL 283729 (1st Cir. June 28, 1994) .................................................. 7

*Burnside v. Dep't of Just.*,
  Civ. A. No. 20-2309 (TSC), 2022 WL 715181 (D.D.C. Mar. 10, 2022) ................................... 4

*Cannon v. District of Columbia*,
  717 F.3d 200 (D.C. Cir. 2013) ............................................................................ 5

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .................................................................................... 5, 6

*Citizens for Resp.& Ethics in Wash. v. FEC*,
  711 F.3d 180 (D.C. Cir. 2013) ............................................................................ 6

*Czekalski v. Peters*,
  475 F.3d 360 (D.C. Cir. 2007) ............................................................................ 6

*Dale v. IRS*,
    238 F. Supp. 2d 99 (D.D.C. 2002) ................................................................. 6, 7, 8

*DeBrew v. Atwood*,
    792 F.3d 118 (D.C. Cir. 2015) ........................................................................ 16

*Evans v. Bureau of Prisons*,
    951 F.3d 578 (D.C. Cir. 2020) ........................................................................ 6

*Fonda v. CIA*,
    434 F. Supp. 498 (D.D.C. 1977) .................................................................... 10

\* *Freedom Watch v. State*,
    925 F. Supp. 2d 55 (D.D.C. 2013) ................................................................. 8, 9

*Freedom Watch, Inc. v. CIA*,
    895 F. Supp. 2d 221 (D.D.C. 2012) ............................................................... 7

*Greene v. Dalton*,
    164 F.3d 671 (D.C. Cir. 1999) ........................................................................ 6

\* *Gun Owners of Am., Inc. v. FBI*,
    594 F. Supp. 3d 37 (D.D.C. 2022) ................................................................. 11, 12, 13

*Hidalgo v. FBI*,
    344 F.3d 1256 (D.C. Cir. 2003) ..................................................................... 15

*Hurd v. District of Columbia*,
    864 F.3d 671 (D.C. Cir. 2017) ........................................................................ 4

*Int'l Counsel Bureau v. Dep't of,*
    *Def.*, 723 F. Supp. 2d 54 (D.D.C. 2010) ....................................................... 8

*Jack's Canoes & Kayaks, LLC v. Nat'l Park Serv.*,
    937 F. Supp. 2d 18 (D.D.C. 2013) ................................................................. 3

*Keys v. Dep't of Homeland Sec.*,
    Civ. A. No. 08-726, 2009 WL 614755 (D.D.C. Mar. 10, 2009) .................... 16

*Khron v. Dep't of Just.*,
    628 F.2d 195 (D.C. Cir. 1980) ........................................................................ 11

*Kolbusz v. FBI*,
    Civ. A. No. 017-0319 (EGS/GMH), 2021 WL 1845352 (D.D.C. Feb. 17, 2021) .................... 15

*Latham v. Dep't of Just.*,
    658 F. Supp. 2d 155 (D.D.C. 2009) ............................................................... 14

*Markowicz v. Johnson,*
  206 F. Supp. 3d 158 (D.D.C. 2016) ............................................................... 5

*Marshall Cnty. Health Care Auth. v. Shalala,*
  988 F.2d 1221 (D.C. Cir. 1993) ..................................................................... 7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
  475 U.S. 574 (1986) ....................................................................................... 5

* *McKathan v. Dep't of Homeland Sec.,*
  Civ. A. No. 22-1865 (DLF), 2024 WL 1344434 (D.D.C. Mar. 29, 2024) ............. 16

*McKinley v. FDIC,*
  807 F. Supp. 2d 1 (D.D.C. 2011) ............................................................... 9, 14

*Nat'l Sec. Couns. v. CIA,*
  898 F. Supp. 2d 233 (D.D.C. 2012) ............................................................... 7

*Nat'l Sec. Couns. v. CIA,*
  969 F.3d 406 (D.C. Cir. 2020) .................................................................. 8, 14

*Oglesby v. Dep't of Army,*
  920 F.2d 57 (D.C. Cir. 1990) ....................................................................... 15

*Pharm. Rsch. & Mfrs. of Am. v. Dep't of Health & Hum. Servs.,*
  43 F. Supp. 3d 28 (D.D.C. 2014) ................................................................... 5

*Pinson v. Dep't of Just.,*
  69 F. Supp. 3d 108 (D.D.C. 2014) ............................................................... 15

* *Protect the Pub.'s Tr. v. Dep't of Lab.,*
  Civ. A. No. 22-2849 (TJK), 2023 WL 6160014 (D.D.C. Sept. 21, 2023) ......... 12, 14

*Sack v. CIA,*
  53 F. Supp. 3d 154 (D.D.C. 2014) ................................................................. 9

*Shapiro v. CIA,*
  170 F. Supp. 3d 147 (D.D.C. 2016) ............................................................ 8, 9

*Vanover v. Hantman,*
  77 F. Supp. 2d 91 (D. D.C. 1999) ................................................................. 4

*Vasser v. McDonald,*
  228 F. Supp. 3d 1 (D.D.C. 2016) ................................................................... 4

*Vest v. Dep't of Air Force,*
  793 F. Supp. 2d 103 (D.D.C. 2011) ............................................................. 17

*Ward v. D.C. Dep't of Youth Rehab. Servs.*,
 768 F. Supp. 2d 117 (D.D.C. 2011) ............................................................... 4

*Wardrick v. Fed. Bureau of Prisons*,
 Civ. A. No. 19-0184, 2020 WL 1821133 (D.D.C. Apr. 10, 2020) ............................ 4

*Wilbur v. CIA*,
 355 F.3d 675 (D.C. Cir. 2004) ...................................................................... 15

**Statutes**

5 U.S.C. § 552 ............................................................................ 1, 2, 6, 3

**Rules**

Fed. R. Civ. P. 12 ........................................................................... 3, 4, 7

Fed. R. Civ. P. 56 .................................................................................. 5

**Regulations**

6 C.F.R. § 5.3 ............................................................................... 2, 16

Plaintiff Center to Advance National Security brought this lawsuit under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA") to compel Defendant, the Department of Homeland Security (the "Department'), particularly its component the United States Citizenship & Immigration Services ("USCIS") to comply with its FOIA request. Plaintiff seeks a host of records relating to USCIS Adjudication Officer Nejwa Ali. Plaintiff has failed to reasonably describe the records it seeks, and therefore Plaintiff has not submitted a valid FOIA request that the agency is required to process. Alternatively, Plaintiff failed to exhaust its administrative remedies by failing to respond to USCIS's clarification letter before filing suit. Therefore, the Court should dismiss Plaintiff's Complaint in full under Federal Rule of Civil Procedure ("Rule") 12(b)(6) or enter judgment in Defendant's favor under Rule 56.

## FACTUAL BACKGROUND

On November 9, 2023, Plaintiff submitted a FOIA request to USIS "to examine Nejwa Ali's security clearances and any other documentation that may suggest compromised interests in her immigration work." Compl. Attach., ECF No. 1-1. Plaintiff sought six categories of records:

(1) "All meeting requests, calendar entries, virtual meeting invitations, call logs and any chats in the relevant virtual platforms (e.g., Microsoft Teams, Zoom, Webex, etc.) pertaining to the security screening of Nejwa Ali;"

(2) "[R]ecords on this topic exchanged between and among" twelve different individuals;

(3) "[A]ll emails, text messages, chat sessions, or other forms of written or electronic communication used to discuss the development of the security screenings of Nejwa Ali above containing" twenty-five different "phrases and/or words," one of which is "Asylum;"

(4) "SF-50"; "OF-306"; "SF-61" "I-9", "SF-256", "SF-181", "SF-15", "SF-144", and "W4;"

(5) "All records exchanged by or between any official listed above with any individual working for one of the following [eighteen] media outlets (with suggested email addresses) on the topic of the security screening of Newa Ali;" and

(6)    "All communications exchanged between any of the above officials identified as an employee, agent, consultant, or representative of one of the following [twelve] organizations."

*Id.* (cleaned up).

On November 9, 2023, USCIS sent Plaintiff an email stating that the request had been submitted and assigned the control number COW2023007768 and that an acknowledgement letter had been sent to Plaintiff's myUSCIS account. Compl. ¶ 8.

On May 1, 2024, USCIS followed up with Plaintiff via the myUSCIS account, seeking clarification of Plaintiff's request pursuant to Department regulation, 6 C.F.R. § 5.3(b). Baxley Decl. Ex. C., enclosed herewith; Baxley Decl. ¶ 10. This letter stated, "Upon initial review, [USCIS] does not find that you have adequately described the records sought." Baxley Decl. Ex. C at 4.[1]

USCIS accordingly sought clarification from Plaintiff to assist it in processing the request. In particular, USCIS noted in its May 1, 2024, letter that the word "Asylum" in Part 3 of Plaintiff's request was "too broad and vague to use by itself." Baxley Decl. Ex. C at 4. USCIS noted that since the term "Asylum" "is used within signature blocks of employees, it will produce voluminous records, which would be unreasonable and burdensome." *Id.* USCIS suggested that Plaintiff use another word with "Asylum" other than "office or officer." *Id.* USCIS also noted that for Parts 5 and 6 of Plaintiff's request, USCIS needed to confirm some of the email domain addresses. *Id.* USCIS noted that Plaintiff had not provided email domain addresses for Part 6 and had incomplete information for two of the email domain addresses proposed in Part 5. *Id.* USCIS informed Plaintiff, "If you do not respond with clarification of the records you are requesting, your request may be administratively closed by our office in accordance with 6 C.F.R. § 5.3(c)." *Id.*

---

[1]    Citations are to the ECF header page numbers.

As of July 30, 2024, USCIS has no record of receiving a response from Plaintiff to its May 1, 2024, clarification letter. Baxley Decl. ¶¶ 10-11. Instead, on May 31, 2024, Plaintiff filed suit seeking records for its request. Compl., ECF No. 1.

## LEGAL STANDARDS

## I.    <u>Motion to Dismiss</u>

A motion under Rule 12(b)(6) tests whether a complaint has successfully "state[d] a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). While detailed factual allegations are not necessary to withstand a Rule 12(b)(6) challenge, a plaintiff must nonetheless provide "more than labels or conclusions" or "a formulaic" recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim is facially plausible only when a plaintiff pleads factual content that enables the Court to "draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While the Court must assume that any "well-pleaded factual allegations" in a complaint are accurate, conclusory allegations "are not entitled to the assumption of truth." *Id.* at 679. Furthermore, the Court "need not accept inferences drawn by the plaintiff if such inferences are unsupported by the facts set out in the complaint. Moreover, the court is not bound to accept as true a legal conclusion couched as a factual allegation." *Jack's Canoes & Kayaks, LLC v. Nat'l Park Serv.*, 937 F. Supp. 2d 18, 27 (D.D.C. 2013) (internal quotation marks and citations omitted). A complaint that "pleads facts that are merely consistent with a defendant's liability, [] stops short of the line between possibility and plausibility of entitlement to relief," and is insufficient to withstand a Rule 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

In considering a Rule 12(b)(6) motion, a court may consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." *Wardrick v. Fed. Bureau of Prisons*, Civ. A. No. 19-0184, 2020 WL 1821133, at *4 (D.D.C. Apr. 10, 2020) (quoting *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017)). The Court may also consider "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 n.2 (D.D.C. 2011) (declining to convert motion to dismiss to summary judgment) (internal quotations and citations omitted). "'[W]here a document is referred to in the complaint or is central to the plaintiff's claims, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment.'" *Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D. D.C. 1999), *aff'd*, 38 F. App'x 4 (D.C. Cir. 2002). "Moreover, a document need not be mentioned by name to be considered 'referred to' or 'incorporated by reference' into the complaint. Otherwise, 'a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied.'" *Alston v. Johnson*, 208 F. Supp. 3d 293, 298 (D.D.C. 2016).

In particular, "[c]ourts have consistently recognized that it is appropriate to review both formal and informal agency-related documents without a converting a motion to summary judgment when a document is central to plaintiff's claim." *Burnside v. Dep't of Just.*, Civ. A. No. 20-2309 (TSC), 2022 WL 715181, at *4 (D.D.C. Mar. 10, 2022) (quotations omitted) (citing cases). "If courts could not take judicial notice of such public documents, plaintiffs who obviously had not complied with the administrative-exhaustion process could survive motions to dismiss purely by failing to attach their administrative complaint." *Vasser v. McDonald*, 228 F. Supp. 3d 1,

10 (D.D.C. 2016). The Court may also take judicial notice of information posted on official public websites of government agencies. *See, e.g., Markowicz v. Johnson*, 206 F. Supp. 3d 158, 161 n.2 (D.D.C. 2016) (citing *Pharm. Rsch. & Mfrs. of Am. v. Dep't of Health & Hum. Servs.*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014) ("Courts in this jurisdiction have frequently taken judicial notice of information posted on official public websites of government agencies.") (citing *Cannon v. District of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013) (taking judicial notice of document posted on D.C. public website)))).

## II.    <u>Motion for Summary Judgment</u>

Summary judgment is appropriate when the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one whose existence affects the outcome of the case. A "genuine dispute" exists when the non-movant produces sufficient evidence of a material fact so that a fact finder is required to resolve the parties' differing versions at trial. *Id.* at 249.

Summary judgment endeavors to streamline litigation by disposing of factually unsupported claims or defenses and thereby determining whether trial is genuinely necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The movant bears the initial burden of identifying portions of the record that demonstrate the absence of any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323. In response, the non-movant must point to specific facts in the record that reveal a genuine issue that is suitable for trial. *See Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 575 (1986)). A moving party may therefore succeed on summary judgment by showing that the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at

322. A moving party may also succeed by pointing to the absence of evidence proffered by the nonmoving party. *Id.*

In considering a motion for summary judgment, a court must "eschew making credibility determinations or weighing the evidence[,]" *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007), and all underlying facts and inferences must be analyzed in the light most favorable to the non-movant, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Nevertheless, conclusory assertions offered without any evidentiary support do not establish a genuine issue for trial. *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

## ARGUMENT

## I.    <u>Plaintiff Did Not Submit a Valid Request.</u>

FOIA sets forth two requirements applicable here that are prerequisites for a valid request: a request must (i) "reasonably" describe the records sought, and (ii) comply with any "published rules stating the time, place, fees (if any), and procedures to be followed." 5 U.S.C. § 552(a)(3)(A); *Dale v. IRS*, 238 F. Supp. 2d 99, 103 (D.D.C. 2002). The obligation to process a request only begins upon receipt of a valid request, *i.e.*, one that satisfies these requirements. *Dale*, 238 F. Supp. 2d at 103.

Thus, a plaintiff fails to state a FOIA claim if its FOIA request fails to reasonably describe the records sought. *See Evans v. Bureau of Prisons*, 951 F.3d 578, 583 (D.C. Cir. 2020) ("Under FOIA, an agency is only obligated to release nonexempt records if it receives a request that 'reasonably describes such records.'") (quoting 5 U.S.C. § 552(a)(3)(A)); *Citizens for Resp. & Ethics in Wash. v. FEC*, 711 F.3d 180, 185 n.3 (D.C. Cir. 2013) ("Of course, the duties that FOIA imposes on agencies . . . apply only once an agency has received a proper FOIA request. A proper request must 'reasonably describe[ ]' the records sought[.]") (quoting 5 U.S.C. § 552(a)(3)(A)).

As a general matter, records are considered reasonably described "'if a professional employee of the agency familiar with the subject matter can locate the records with a reasonable amount of effort.'" *Freedom Watch, Inc. v. CIA*, 895 F. Supp. 2d 221, 228 (D.D.C. 2012). But that general rule still requires that some "subject matter" or defined "class" of records be identified. *Am. Fed'n of Gov't Emps. v. Dep't of Com.*, 907 F.2d 203, 209 (D.C. Cir. 1990); *cf. Am. Ctr. for L. & Just. v. Dep't of Homeland Sec.*, 573 F. Supp. 3d 78, 85 (D.D.C. 2021) (finding a request seeking documents "referencing or regarding in any way" eight topics to be too broad to allow the agency "to determine precisely what records are being requested").

Whether a FOIA request "reasonably describes" the records sought "is a purely legal question of statutory interpretation," and "'there is no inherent barrier'" in resolving that legal question on a Rule 12(b)(6) motion to dismiss. *Nat'l Sec. Couns. v. CIA*, 898 F. Supp. 2d 233, 274 (D.D.C. 2012) (quoting *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993)). That is, whether a request is reasonably described is an objective test, and courts are equipped to make this determination by resort to the FOIA request alone. *See Dale*, 238 F. Supp. 2d at 105 (noting that document request was deficient "on its face"). In other words, agencies need not introduce evidence showing that, based on a particular document request, their professionals are incapable of locating the requested records with a reasonable amount of effort. *See Borden v. FBI*, No. 94-1029, 1994 WL 283729, at *1 (1st Cir. June 28, 1994) (per curiam) ("[T]he request . . . does not reasonably describe the records sought. Since the complaint shows on its face that the plaintiff did not present a proper request, we need not consider defendant's remaining arguments.") (citations omitted). The inquiry focuses on whether the request is objectively reasonably described. *Dale*, 238 F. Supp. 2d at 105.

Finally, overbroad and unreasonably burdensome requests are invalid because "FOIA was not intended to reduce government agencies to full-time investigators on behalf of requesters." *Assassination Archives v. CIA*, 720 F. Supp. 217, 219 (D.D.C. 1989). Nor was FOIA intended to allow requesters to conduct a "fishing expedition" through agency files. *Dale*, 238 F. Supp. 2d at 104-05. This limitation protects the ability of federal agencies to prioritize their resources, while also providing the public reasonable access to agency records. *See*, *e.g.*, *Int'l Counsel Bureau v. Dep't of Def.*, 723 F. Supp. 2d 54, 59-60 (D.D.C. 2010). Ultimately, "[a]n agency need not honor a request that requires 'an unreasonably burdensome search.'" *Am. Fed'n of Gov't Emps.*, 907 F.2d at 209; *see also Freedom Watch v. State*, 925 F. Supp. 2d 55, 62-63 (D.D.C. 2013) (dismissing complaint where overbroad requests were "infirm from the beginning" regardless of defendants' response to the requests). "The upshot is that, when the request as drafted would require an agency to undertake an unreasonably burdensome search, the agency can decline to process the request." *Nat'l Sec. Couns. v. CIA*, 969 F.3d 406, 410 (D.C. Cir. 2020).

Applying these principles, Plaintiff's request is too vague and overbroad, such that a search would be unduly burdensome and unreasonable. In its FOIA request, Plaintiff seeks six categories of records regarding the security screening of Nejwa Ali dating from "January 1, 2019, to the date the search begins." Compl. Attach., ECF No. 1-1. Plaintiff's FOIA request is legally invalid for several reasons.

### A.    Overly Broad and Vague Subject Matter

First, the subject matter of Plaintiff's FOIA request is vague and overbroad because it lacks clarity as to the records sought. Courts have found that requests seeking records "pertaining to" "relating to," or "concerning the same," as opposed to records that merely "mention" or "reference," "a specified person or topic" are not reasonably described. *Shapiro v. CIA*, 170 F. Supp. 3d 147, 155 (D.D.C. 2016) (quotations omitted); *Anand v. Dep't of Health & Hum. Servs.*,

Civ. A. No. 21-1635 (CKK), 2023 WL 2646815, at *12 (D.D.C. Mar. 27, 2023) ("Courts in this Circuit routinely hold that similar requests seeking all documents or reports concerning a particular topic or person do not reasonably describe the records sought."); *Freedom Watch*, 925 F. Supp. 2d at 61 ("[S]ince the requests asked for 'all' records that 'relate to' each subject area, they were inevitably 'subject to criticism as overbroad since life, like law, is 'a seamless web,' and all documents 'relate' to all others in some remote fashion." (citations omitted)); *McKinley v. FDIC*, 807 F. Supp. 2d 1, 7 (D.D.C. 2011) (citing cases).

Plaintiff's request here falls in the former impermissible bucket. Plaintiff prefaces its FOIA request with the general statement that it seeks records "to examine Nejwa Ali's security clearances and any other documentation that may suggest compromised interests in her immigration work." Compl. Attach., ECF No. 1-1 at 1. Part 1 seeks records "pertaining to the security screening of Nejwa Ali;" Part 2 seeks records "on this topic;" Part 3 seeks communications that "discuss the development of the security screening of Nejwa Ali;" and Part 5 seeks records "on the topic of the security screening of Nejwa Ali." *Id.* at 1-2.

Because "'a record may pertain to something without specifically mentioning it,' the request's 'lack of clarity le[ft] the agency to guess at the plaintiff's intent.'" *Shapiro*, 170 F. Supp. 3d at 154 (alterations in original) (quoting *Sack v. CIA*, 53 F. Supp. 3d 154, 164 (D.D.C. 2014)). Here, for example, any record discussing general security screening policies or procedures that may have ever been applicable to Ms. Ali could technically be within the scope of Plaintiff's FOIA request and, as a result, would require the agency to craft some open-ended, broad search to capture any and all such records that may not necessarily even mention or reference Ms. Ali. Courts in this Circuit have found that such FOIA requests requiring such broad, undefined searches to be unreasonably described. *See Sack*, 53 F. Supp. 3d at 164 (request seeking records "'pertaining in

whole or in part . . . to a list of closed Inspector General investigations and reports'" was not reasonably described since the agency "would [ ] have needed to devise a method to search for records that do not mention a list of closed Inspector General investigations and reports, but still somehow pertain to such a list."); *Fonda v. CIA*, 434 F. Supp. 498, 501 (D.D.C. 1977) (request seeking documents that "concern her" are not reasonable described since "[t]he difficulties in such an open-ended search are apparent[ ] [because] [p]laintiff offers no criterion by which defendants can determine which documents 'concern her.'").

Moreover, to the extent that any part of Plaintiff's request seeks "any other documentation that may suggest compromised interests in [Ms. Ali's] immigration work," that is also overbroad and vague. Such a request would essentially require a USCIS FOIA analyst to make his or her own judgment calls about what may or may not be "compromis[ing]" information regarding Ms. Ali's immigration work, and, therefore, makes it impossible for the agency to identify the records sought. *See Anand*, 2023 WL 2646815, at *13 (finding that "there is latitude in what constitutes '*improper* prescribing of opiates' such that it would not allow [the agency] to identify the records sought" (emphasis in original)).

### B.    Overly Broad Set of Custodians, Recipients, and Senders

Second, five of the six requests would involve a search for records with an overly broad set of custodians, recipients, and senders. For instance, Parts 1, 3, and 4 of Plaintiff's FOIA request have no limitation on which USCIS custodians' records the agency may have to search with respect to the security screening of Ms. Ali. *See* Compl., Attach., ECF No. 1-1 at 1-2. Without such limitation on where USCIS may have to search within the agency, these parts of Plaintiff's requests are impermissibly broad. *See Am. Ctr. for Law & Just.*, 573 F. Supp. 3d at 87 (finding request unreasonably described where "any search responsive to the plain language of [plaintiff's] request would require, at a minimum, a review of communications by 'any and all employees' at three

agencies [] that might be 'remotely related' to [plaintiff]'s eight categories 'without any limitation on the method or form of communication'"); *Gun Owners of Am., Inc. v. FBI*, 594 F. Supp. 3d 37, 44 (D.D.C. 2022) ("By using a vague catch-all instead of identifying a discrete agency or set of employees, Request 1 embeds an intractable uncertainty preventing even the most conscientious and diligent processor from 'determin[ing] precisely what records are being requested.'"); *Am. Fed'n of Gov't Emps.*, 907 F.2d at 208 (finding request unreasonably described where it "would require the Bureau to locate 'every chronological office file and correspondent file, internal and external, for every branch office, staff office [etc.]'"); *Khron v. Dep't of Just.*, 628 F.2d 195, 198 (D.C. Cir. 1980) (holding as overly broad a FOIA request that would have required review of 'each and every . . . criminal case in order to determine whether it contains any evidence of the data" requested (cleaned up)). The overbreadth is particularly acute here where USCIS alone has 21,000 employees and contractors working at more than 200 offices around the world. *See Mission & Core Values: Who We Are*, USCIS, https://www.uscis.gov/about-us/mission-and-core-values (last visited Aug. 5, 2024).

Next, Parts 5 and 6 would require USCIS to search for records from an ambiguous, overbroad set of individuals from thirty different named outside organizations. *See* Compl. Attach., ECF No. 1-1 at 2-3 (Part 5 seeks records exchanged between twelve USCIS officials and "any individual working for one of the following [eighteen] media outlets;" Part 6 seeks all "communications exchanged between any of the above officials identified as an employee, agent, consultant, or representative of one of the following [twelve] organizations").

Because "working for" or "being an employee, agent, consultant, or representative" of any one of these thirty outside organizations could take on a multitude of meanings or, on the other hand, cover essentially "any and all" employee of these thirty organizations, courts have found

such requests to be unreasonably described. *See Gun Owners*, 594 F. Supp. 3d at 44-45 (finding request was unreasonably described by seeking records "agent or employee" of six listed officials because it could take on different meanings and therefore, "leave[s] the unfortunate FOIA processor . . . in a hopeless muddle without clear guidance about what documents are being sought." (quotations omitted)); *Am. Ctr. for L. & Just.*, 573 F. Supp. 3d at 86 (noting unreasonableness of request where the phrase "representative or agents" of the Secretary of Homeland Security "encompasses each of the Department's 240,000 employees" because "[t]hey all carry out policy directives as pronounced by [the Secretary]").

Indeed, when faced with a similar request seeking communications between all agency "political appointees" and "any employee or representative" of twenty-five separate organizations, the Court held that Plaintiff's request failed to reasonably describe the records sought because Plaintiff failed to "identify individuals associated with the twenty-five named organizations" thereby "creat[ing] 'ambiguity' and would require Defendant to 'investigate who at the . . . listed non-Department entities might qualify.'" *Protect the Pub.'s Tr. v. Dep't of Lab.*, Civ. A. No. 22-2849 (TJK), 2023 WL 6160014, at *3 (D.D.C. Sept. 21, 2023). The Court should reach the same conclusion here. Like the requestor in *Protect the Public's Trust*, Plaintiff also does not provide any way to identify those individuals "working for" the identified organizations in Part 6, by failing to provide any email domain names associated with these organizations. *See id.* at *3 n.3 (finding that "Plaintiff's request provides no clue as to how it could adequately identify responsive communications with individuals who fit the bill" as "Plaintiff does not identify any email domain names associated with the organizations."). Indeed, USCIS informed Plaintiff of this shortcoming in its May 1, 2024, letter to Plaintiff. *See* Baxley Decl. Ex. C. at 4.  And before it filed its Complaint, Plaintiff had not responded to USCIS's letter. *See* Baxley Decl. ¶¶ 10-11.

While Part 5 does include Plaintiff's suggestions for email domains, that is not necessarily dispositive because it still seeks records for any "employee, agent, consultant, or representative." *See Gun Owners*, 594 F. Supp. 3d at 45 ("Even if Request 1 were limited to the email domains plaintiffs suggest, their catch-all request for communications with all 'agents and employees' would still be impermissibly imprecise."). Especially here, Plaintiff was already on notice that USCIS had difficulty crafting a search in response to Plaintiff's request when its May 1, 2024, letter, it specifically explained to Plaintiff that it had not provided full domain addresses for at two of the identified organizations in Part 5. Baxley Decl. Ex. C. at 4.

### C.    Overly Broad Search Terms

Third, Parts 3 and 4 include vague search terms. As USCIS's May 1, 2024, letter to Plaintiff explained, using the word "Asylum" as a search term in Part 3 would result in a voluminous set of records, since "Asylum" "is used within signature blocks of employees." Baxley Decl. Ex. C at 4. For Part 4, while Plaintiff identifies nine search terms referencing certain types of government personnel forms, Plaintiff does not make clear whether Plaintiff only seeks those specific government personnel forms pertaining to Ms. Ali, or whether it also seeks any and all documents with those personnel form-identifiers referenced within the document and relating to Ms. Ali. *See* Compl. Attach., ECF No. 1-1 at 2. Given that those nine search terms indeed reference types of government personnel forms,[2] it is only logical that a very voluminous set of records are likely to reference those forms in one way or another. As a result, USCIS would necessarily have to search through a voluminous set of records to determine whether any of those records with the word "Asylum" or having any of those nine government-identifiers in them necessarily "discuss the

---

[2]    For example, an "SF-50" is a standard government personnel form to provide employees "Notification of Personnel Action." *See* Off. Of Personnel Mgmt., https://www.opm.gov/forms/pdfimage/sf50.pdf.

development of the security screening of Nejwa Ali," "examine Nejwa Ali's security clearances," or are "documentation that may suggest compromised interests in her immigration work," *id.* at 1-2, which as described above is already vague and overbroad in of itself. For this additional reason, USCIS's efforts to respond to Parts 3 and 4 would necessarily involve a search that is overbroad and burdensome – a request therefore that USCIS may decline to process. *See Nat'l Sec. Couns. v. CIA*, 969 F.3d 406, 410 (D.C. Cir. 2020).

### D.    Overly Broad Definition of Requested Records

Finally, Plaintiff's definition of the types of records it seeks is overbroad. Plaintiff here seeks twenty-six types of documents and communications—many of which themselves have sub-classes of defined documents—including a catchall, "any other compilation of data from which information can be obtained." Compl. Attach., ECF No. 1-1 at 3.

The "records" that Plaintiff defines range anything from "documents" to "electronic and magnetic recordings of meetings" to "virtual meeting records" to "photographs" to "maps" and more. *Id.* While "[s]uch descriptions are not uncommon in a FOIA request," "when paired with [plaintiff's] other language they only further broaden [plaintiff's] request." *Am. Ctr. for L. & Just.*, 573 F. Supp. 3d at 86-87 (finding request was not reasonably described in part because Plaintiff's request "define[d] 'record' as 'any information that qualifies under [FOIA] and includes, but is not limited to, the original or any full, complete, and unedited copy' of 19 types of written communication."); *Protect the Pub.'s Tr.*, 2023 WL 6160014, at *5 (finding request unreasonably described in part because "Plaintiff's request seeks 'all records,' which it defines to include everything from 'documents' to 'telephone notes' to 'digital logs' to 'photographs' to 'maps' and more."); *Latham v. Dep't of Just.*, 658 F. Supp. 2d 155, 161 (D.D.C. 2009) (finding request unreasonably described where it "listed several types of documents").

In sum, because Plaintiff's request seeks a broad range of records on an overly broad and vague subject matter involving a broad set of custodians, recipients, and senders, while using a broad set of search terms, Plaintiff has failed to reasonably describe its FOIA request, and the Court should dismiss Plaintiff's Complaint.

## II.    <u>Alternatively, Plaintiff Failed to Exhaust its Administrative Remedies.</u>

USCIS informed Plaintiff that its initial request was overly broad or otherwise did not reasonably describe the records it sought, provided it with an opportunity to refine or perfect its request, and specified the kind of additional information that would be required. *See* Baxley Decl., Ex. C. Plaintiff did not respond to USCIS's request before filing suit in this Court. Plaintiff's failure to do so means that it failed to follow through with its administrative remedy process and thus cannot now bring a FOIA challenge in federal court.

It is settled law that prior to seeking relief in federal court, a plaintiff must exhaust the administrative remedies available under the FOIA. *Oglesby v. Dep't of Army*, 920 F.2d 57, 61-62 (D.C. Cir. 1990); *see also Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004) ("exhaustion of administrative remedies is a mandatory prerequisite to a lawsuit under FOIA") (citation and internal quotation marks omitted). A FOIA requester fails to exhaust administrative remedies whenever the requester does not comply with the administrative process set forth under FOIA and agency regulations. *Hidalgo v. FBI*, 344 F.3d 1256, 1258-60 (D.C. Cir. 2003); *see also Pinson v. Dep't of Just.*, 69 F. Supp. 3d 108, 114 (D.D.C. 2014). As the D.C. Circuit has explained, exhaustion is necessary so that an agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review. *See Oglesby*, 920 F.2d at 61. "If the requester fails to exhaust administrative remedies before filing suit, a court can dismiss the complaint or grant summary judgment for the agency." *Kolbusz v. FBI*, Civ. A. No.

017-0319 (EGS/GMH), 2021 WL 1845352, at *7 (D.D.C. Feb. 17, 2021), *R. & R. adopted*, 2023 WL 2072481 (D.D.C. Feb. 17, 2023) (citations omitted). "Failure to exhaust administrative remedies is not a mere technicality, and a court must decline to decide the merits of an unexhausted FOIA claim[.]" *Id.* (citations omitted).

Under Department regulations, a requester "must describe the records sought in sufficient detail to enable [Department] personnel to locate them with a reasonable amount of effort. A reasonable description contains sufficient information to permit an organized, non-random search for the record based on the component's filing arrangements and existing retrieval systems." 6 C.F.R. § 5.3(b). Further, "[i]f a request does not adequately describe the records sought, [the Department] may at its discretion either administratively close the request or seek additional information from the requester." 6 C.F.R. § 5.3(c).

USCIS informed Plaintiff of the specific deficiencies, and invited Plaintiff to reasonably describe or narrow its request. *See* Baxley Decl. Ex. C. Plaintiff did not do so before filing suit in this Court. Baxley Decl. ¶¶ 10-11. Whether this is considered solely a failure to comply with the Department's FOIA regulations under 5 U.S.C. § 552(a)(3)(A)(ii), or considered a broader "failure to exhaust," it is clear that Plaintiff's failure to respond to USCIS's efforts to work with it to clarify its request means that Plaintiff cannot now state a claim for a FOIA violation. *See DeBrew v. Atwood*, 792 F.3d 118, 124 (D.C. Cir. 2015) (plaintiff failed to exhaust by not following up first with agency before filing suit after agency informed plaintiff his request did not adequately describe the record he sought and advised him to either submit a more precise request or resubmit his request); *McKathan v. Dep't of Homeland Sec.*, Civ. A. No. 22-1865 (DLF), 2024 WL 1344434, at *5–6 (D.D.C. Mar. 29, 2024) (finding plaintiff failed to exhaust by not responding to Department's request for clarification letter before filing suit); *Keys v. Dep't of Homeland Sec.*,

Civ. A. No. 08-726, 2009 WL 614755, at *5 (D.D.C. Mar. 10, 2009) ("Plaintiff failed to reasonably describe the records sought because he did not respond to EOUSA's letter notifying him that he must identify specific offices to be searched. In addition, Plaintiff did not administratively appeal the determination made in EOUSA's letter. Therefore, Plaintiff failed to exhaust his administrative remedies with respect to his 2004 FOIA request."); *Vest v. Dep't of Air Force*, 793 F. Supp. 2d 103, 115 (D.D.C. 2011) ("[T]he Marine Corps represents that it complied with these regulations [to notify requester of deficient requests] by referring the request to the Army and informing the plaintiff that additional information regarding Morrison's affiliation with the Marine Corps was needed. . . . The plaintiff never responded to the Marine Corps' letter. . . . Accordingly . . . plaintiff failed to exhaust his administrative remedies.").

Therefore, the Court should grant summary judgment for Defendant because Plaintiff failed to administratively exhaust its remedies before filing suit in this Court.

*        *        *

## CONCLUSION

For these reasons, Plaintiff's Complaint should be dismissed, or alternatively summary judgment should be granted for Defendant.

Dated: August 5, 2024
       Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By: _____/s/ Erika Oblea_____
       ERIKA OBLEA, D.C. Bar #1034393
       Assistant United States Attorney
       601 D Street, NW
       Washington, DC 20530
       (202) 252-2567
       erika.oblea@usdoj.gov

*Attorneys for the United States of America*

- 18 -